David J. Bodney (006065)
Email: bodneyd@ballardspahr.com
Craig C. Hoffman (026017)
Email: hoffmanc@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595

Attorneys for Discovery Communications,
Inc., Original Media, LLC and Brian Nashel

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Cody Lundin, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Discovery Communications, Inc. a Maryland corporation; Original Media, a New York, LLC; and Brian Nashel, an individual.<br><br>Defendants. | NO. 2:16-CV-01568-ROS<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

*Preliminary Statement*

Defendants' Motion to Dismiss Plaintiff's Complaint should be granted because Plaintiff cannot refute that (1) his defamation and declaratory relief claims are barred by Arizona's *one-year* statute of limitations, and (2) his false light invasion of privacy claim is barred as a matter of law because Plaintiff, an admitted public figure, cannot bring a false light claim based on statements that involve his *public* persona. Try though he might, Arizona law forbids him from circumventing the statute of limitations by making factual assertions in his Response that appear nowhere in his Complaint. Likewise, the single publication rule prohibits him from suing for defamation well past the limitations period, especially insofar as the material at issue – episode 5 of season 4 of the television show *Dual Survival* ("Episode 5"), which first aired on the Discovery Channel on

May 21, 2014 – has been available on the Internet in unaltered form since *May 22, 2014*. To be precise, Plaintiff's lawsuit missed the statutory deadline by nearly a full year.

Similarly, Plaintiff's attempt to save his false light claim by asserting that Episode 5 implicates his "mental incapacity," a "purely private matter" (Response at 9-10), disregards indisputable facts and well-settled Arizona law. All of the statements at issue in Episode 5 relate to Plaintiff's actions as a survivalist, which involve the very skill set that led to Plaintiff to co-hosting the popular *Dual Survival* television show and voluntarily becoming a *public figure* as a matter of law. To allow a false light claim to proceed based on rhetorical implications asserted by Plaintiff's counsel rather than the plain meaning of the statements themselves (and the incontrovertible context in which they were made) would eviscerate the fundamental legal principle that public persons are barred from bringing false light claims based on statements that do not *directly* implicate their *private* lives.

For these reasons, as explained in further detail below, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

*Discussion*

## I. PLAINTIFF'S DEFAMATION CLAIM IS BARRED BY THE APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS.

Plaintiff seemingly agrees that a one-year statute of limitations applies to defamation claims in Arizona and that this statute of limitations begins to run when a defamatory statement is published.[1] *See* Response at 2 ("A one-year statute of limitations

---

[1] Plaintiff does not dispute that his claim for declaratory relief is also governed by the one-year statute of limitations for defamation claims. *See, generally,* Response; *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("There are no statutes which provide that declaratory relief will be barred after a certain period of time. Limitations periods are applicable not to the form of relief but to the claim on which the relief is based."). Accordingly, if Plaintiff's defamation claim fails under Arizona's statute of limitations, then his declaratory relief claim also fails. In sum, Defendants' arguments regarding Arizona's one-year statute of limitations barring Plaintiff's defamation claim apply equally to Plaintiff's declaratory relief claim.

1  applies to defamation claims in Arizona. A defamation claim accrues, and the statute
2  begins to run, when a defamatory statement is published."). However, Plaintiff argues
3  that his defamation claim should not be barred by the statute of limitations because of the
4  alleged republication of Episode 5 within the year preceding the filing of his Complaint,
5  both on television and the Internet. These arguments lack merit, as shown below.

### A. The Complaint Contains No Allegation that Episode 5 Was Aired on Television Within a Year of the Complaint's Filing.

As the Motion pointed out, Plaintiff's Complaint contains no allegation that Episode 5 was aired on television at any time *after* May 21, 2015, a date within one year of the filing of Plaintiff's Complaint.[2] *See* Motion at 5. Consequently, any defamation claim based on any alleged airing of Episode 5 on television is barred by Arizona's one-year statute of limitations.

Plaintiff attempts to escape this fundamental defect by making brand new accusations in his Response that there have been "repeated for-profit commercial rebroadcasts of [Episode 5] as recently as May 21, 2015, on the Discovery channel . . ."[3] Response at 7. Of course, it is axiomatic these new allegations are irrelevant for Rule 12(b)(6) purposes because they are *not* in Plaintiff's Complaint. *See Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

---

[2] Because there is no allegation that Episode 5 has aired on television at any time *after* May 21, 2015, the cases and authority cited by Plaintiff regarding a television station reairing allegedly defamatory material are wholly irrelevant to this case. *See Lehman v. Discovery Communications, Inc.,* 332 F.Supp.2d 534 (E.D.N.Y. 2004) (allegedly-defamatory material aired on television 17 times over three year period); *Tiwari v. NBC Universal, Inc.*, No. C-08-3988 EMC, 2011 WL 5079505 at *2 (N.D. Cal. Oct. 25, 2011) (allegedly-defamatory material aired several times per year in 2007, 2008 and 2009).

[3] Plaintiff also claims in his Response that Episode 5 was rebroadcast "on the Discovery Channel on May 21, *2016* . . ." Response at 4 (emphasis added). This appears to be a typographical error, and such an allegation does not appear in Plaintiff's Complaint, which *pre-dates* May 21, 2016.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

3

1 dismiss.") (emphasis in original); *see also Edwards v. PHH Mortgage Corp.,* No. CV-15-
2 00919-PHX-ROS, 2015 WL 11120682 at *4 n.7, (D. Ariz. Aug. 12, 2015) ("The Court
3 cannot consider new allegations in or exhibits attached to [the plaintiff's] response to the
4 motion to dismiss."). Consequently, the Complaint fails to state a viable defamation
5 claim based on any alleged airing of Episode 5 on television by Defendants.

### B. The Single Publication Rule Defeats Any Claim for Defamation Based on the Availability of Episode 5 on the Internet.

As established by the Earley Declaration (Exhibit A to the Motion), Episode 5 has been available for viewing on the Internet via different websites and platforms since May 2014.[4] Consequently, Arizona's single publication rule, which has been held to apply to Internet publications, bars Plaintiff's defamation claim based on the availability of Episode 5 on the Internet. *See Larue v. Brown,* 235 Ariz. 440, 445, 333 P.3d 767, 772 (App. 2014) *see also* Restatement (Second) of Torts § 577A, cmt c (1977) ("The [single publication] rule is justified by the necessity of protecting defendants and the courts from the numerous suits that might be brought for the same words if each person reached by such a large-scale communication could serve as the foundation for a new action.").

Plaintiff argues in his Response that an exception to the single publication rule exists here because Episode 5 was allegedly "rebroadcast" on the Internet. *See* Response at 5. However, this represents a fundamental misunderstanding of how the Internet functions. The digital content of Episode 5 is available to all Internet users for a small fee without any involvement from Defendants, and this availability has existed

---

[4] Plaintiff contends that the Court should disregard the Earley Declaration, claiming that it is an attempt to "rewrite" the Complaint rather than an attempt to clarify the Complaint's allegations. However, the Earley Declaration does not contradict a single factual allegation in Plaintiff's Complaint, and cannot fairly be viewed as a rewrite. Plaintiff's Complaint acknowledges the availability of Episode 5 on the Internet, but does not state when Episode 5 was made available on the Internet. *See* Complaint ¶ 122. The Earley Declaration simply clears up this ambiguity. For these reasons, there is no reason to strike or disregard the Earley Declaration, nor is it necessary to convert Defendants' Motion into a motion for summary judgment. *See Ranch Realty, Inc. v. DC Ranch Realty,* 614 F.Supp.2d 983, 988 (D. Ariz. 2007).

4

1 uninterrupted since May 2014. Once information has been published on the Internet
2 there is no further act required by the publisher to make the information available to the
3 public. Contrary to Plaintiff's allegations, Defendants are not "attempting to reach a new
4 audience" in continuing to make Episode 5 available on the Internet because Internet
5 users, which constitutes the pertinent audience, self-select their Internet content.

Indeed, all Internet users have had the ability to view Episode 5 digitally since it was originally made available on the Internet in May 2014. At that point, the targeted "audience" was defined as anyone who had an Internet connection who was willing to pay a small fee to watch Episode 5. That same "audience" exists today. This is not a situation where defamatory content was broadcast to a new locality or published in a new publication. For these reasons, there has been no republication within the meaning of the applicable law.

To be sure, the availability of Episode 5 on the Internet is no different than an Internet publication of an allegedly-defamatory article. So long as the article is not altered substantively, its continued availability on the Internet does not constitute a "republication." *See Larue,* 235 Ariz. at 445, 333 P.3d at 772 ("Because websites are subject to updates or modifications at any time that can be completely unrelated to their substantive content, *the question of republication in the context of Internet publication focuses on whether the update or modification affects the substance of the allegedly defamatory material.*") (emphasis added).

*Larue* is not alone in such a holding. Innumerable courts agree that each viewing of allegedly-defamatory content on the Internet does not reset the statute of limitations, that a publisher altering the means of accessing allegedly-defamatory material located on the Internet does not constitute republication and that unless the allegedly-defamatory material on the Internet is substantively altered, there is no republication. *See Firth v. State,* 747 N.Y.S.2d 69, 71, 775 N.E.2d 463, 465 (Ct. App. 2002) ("[C]laimant maintains that because a Web site may be altered at any time by its publisher or owner and because publications on the Internet are available only to those who seek them, each "hit" or

viewing of the report should be considered a new publication that retriggers the statute of limitations. We disagree."); *Salyer v. Southern Poverty Law Center, Inc.,* 701 F.Supp.2d 912, 917 (W.D. Ky. 2009) ("However, the critical feature of republication is, again, that the original text of the article was changed or the contents of the article presented directly to a new audience. That did not occur here. *Rather, the hyperlink is simply a new means for accessing the referenced article. Making access to the referenced article easier does not appear to warrant a different conclusion from the analysis of a basic reference.*") (emphasis added); *Churchill v. State,* 378 N.J.Super. 471, 484-85, 876 A.2d 311, 319 (N.J. App. 2005) ("We also reject plaintiffs' contention that updates to the SCI's website constituted republications of the report. The updates were merely technical changes to the website. *They altered the means by which website visitors could access the report, but they in no way altered the substance or form of the report.* Therefore, to treat the changes as republications would be inappropriate and defeat the beneficial purposes of the single publication rule.") (emphasis added); *Atkinson v. McLaughlin,* 462 F.Supp.2d 1038, 1055 (D. N.D. 2006) ("The Court finds that the December 19, 2001, modification to the McLaughlins' website consisted of unrelated material which did not materially or substantially alter the substance or content of the website so as to cause its republication."); *In re Philadelphia Newspapers, LLC,* 690 F.3d 161, 174 (3d Cir. 2012) ("However, courts addressing the doctrine in the context of Internet publications generally distinguish between linking, adding unrelated content, or making technical changes to an already published website (which they hold is not republication), and adding substantive material related to the allegedly defamatory material to an already published website (which they hold is republication). Several courts specifically have considered whether linking to previously published material is republication. To date, they all hold that it is not based on a determination that a link is akin to the release of an additional copy of the same edition of a publication because it does not alter the substance of the original publication.") (internal citations omitted).

6

Plaintiff alleges in his Response that the *Larue* case is distinguishable because *Larue* involved allegedly-defamatory text of an article, which Defendants claim is "a static and continuing form of communication" that could be viewed for free. However, there is no logical basis to draw a distinction between allegedly-defamatory written words, on the one hand, and other allegedly-defamatory content such as images or video. The single publication rule, by its own terms, applies to both articles and broadcasts. *See* Ariz. Rev. Stat. § 12-651(A) ("No person shall have more than one cause of action for damages for libel . . . founded upon a single publication, exhibition or utterance, such as any one edition of a newspaper, book or magazine, any one presentation to an audience, any one broadcast over radio or television or any one exhibition of a motion picture."). Neither *Larue* nor logic requires that any distinction be made between Internet content that is free versus content that can be accessed after payment of a fee.

Here, there can be no dispute that Episode 5 has been available in unaltered form on the Internet since May 2014. Any defamation action based on that availability is therefore time-barred by the applicable statute of limitations. For these reasons, Plaintiff's defamation claim based on the availability of Episode 5 on the Internet fails as a matter of law.

### C. Plaintiff's False Light Invasion of Privacy Claim Fails.

Defendants' Motion established that Plaintiff is a public figure and, as a matter of law, public figures cannot bring false light invasion of privacy claims based on statements that relate to their public lives.[5] *See* Motion at 7-8 (citing *Ultimate Creations, Inc. v. McMahon,* 515 F.Supp.2d 1060 (D. Ariz. 2007)).

In his Response, Plaintiff concedes that he is a public figure. Nonetheless, Plaintiff asserts that he has stated a viable false light claim based on the statements made

---

[5] Plaintiff claims that Defendants' position is that, as "a public figure, [Plaintiff] has no privacy rights or false light claims." Response at 8. Not so. Defendants merely contend, consistent with this Court's decision in *Ultimate Creations,* that Plaintiff cannot bring a false light claim based on statements that relate to his public life or actions as a public figure. *See Ultimate Creations,* 515 F.Supp.2d at 1066.

7

during Episode 5. *See* Response at 8. Specifically, Plaintiff contends that the statements made during Episode 5 address the mental health aspect of his private life and placed him in a false light. *Id.* This argument fails for multiple reasons.

First, *Ultimate Creations* is clear that "[i]f a plaintiff is a public figure, he may not bring a false light claim based on statements that relate to his public life or actions as a public figure." 515 F. Supp. 2d at 1066. Here, Plaintiff was undisputedly the host of a reality television show that was, according to Plaintiff's Complaint, one of the most popular and highly-viewed shows on television. *See* Complaint ¶ 28. All of the statements are Plaintiff's own statements in the context of hosting and filming that show him or statements from others about Plaintiff's actions in the context of hosting and filming that show. None of the statements implicates Plaintiff's private life or anything unrelated to his hosting and filming the show. Consequently, all of the allegedly-improper statements indisputably relate to Plaintiff's "actions as a public figure," which renders them inactionable according to the plain language of *Ultimate Creations*. 515 F. Supp. 2d at 1066. This alone is fatal to Plaintiff's invasion of privacy claim.

Second, despite Plaintiff's arguments in his Response, none of the allegedly-improper statements addresses Plaintiff's "mental health." Instead, Plaintiff appears to be arguing that the statements create implications that intimate his mental state. But allowing a public person to convert, by implication, the plain meaning of statements concerning his public life or actions as a public figure into statements that implicate his private life would eviscerate the First Amendment protections recognized in *Ultimate Creations.*

Third, even if the statements did implicate Plaintiff's mental health (and they do not), if Plaintiff was, in fact, erratic or impaired it would directly impact his qualifications to be an internationally-recognized professional survival instructor, which is precisely the skill set that makes Plaintiff a public figure. *See* Complaint ¶ 10. Therefore, the statements would be relevant to Plaintiff's public life and therefore inactionable under *Ultimate Creations.* 515 F. Supp. 2d at 1066.

## **Conclusion**

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 4th day of October, 2016.

BALLARD SPAHR LLP

By: /s/ Craig C. Hoffman
David J. Bodney
Craig C. Hoffman
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Attorneys for Defendants Discovery Communications, Inc., Original Media, LLC and Brian Nashel

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

# CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the attached document to the clerk's office using the CM/ECF system for filing and transmittal of a notice of electronic filing to the following CM/ECF registrant, and mailed a copy of same to the following, if a non-registrant, this 4th day of October, 2016:

    Kraig J Marton
    David Farren
    Jaburg & Wilk
    3200 N. Central Avenue, 20th Floor
    Phoenix, AZ 85012
    Attorneys for Plaintiff

A courtesy copy is being mailed this same date to:

    The Honorable Roslyn O. Silver
    United States District Court
    Sandra Day O'Connor U.S. Courthouse, Suite 624
    401 West Washington Street, SPC 59
    Phoenix, AZ 85003-2158


/s/ Catherine M. Weber