# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Cody Lundin,

    Plaintiff,

v.

Discovery Communications Incorporated, et al.,

    Defendants.

No. CV-16-01568-PHX-ROS

**ORDER**

Plaintiff Cody Lundin believes a television show originally broadcast on May 21, 2014, contained defamatory statements and depicted him in a false light. Lundin has sued the owner and operator of the television channel that broadcast the show, the limited liability company that produced the show, and the limited liability company's manager. Defendants seek dismissal of Lundin's claims, arguing Lundin waited too long to file his defamation claim and that he has not stated a plausible false light claim. Defendants are correct that the defamation claim is untimely but incorrect that Lundin needs to state more to proceed on his false light claim.

## BACKGROUND

Lundin is a well-known "professional survival instructor with more than 27 years of hands-on teaching experience." (Doc. 1 at 2). In 2009, Defendant Discovery Communications Inc. ("Discovery"), through a related company, entered into a twelve month agreement with Lundin for him to co-host a television show called "Dual Survival." Under that agreement, Lundin would serve as a survival expert on the show

and he would be joined by a co-host named David Canterbury. All episodes would be produced by Defendant Original Media, LLC. Defendant Brian Nashel was the manager of Original Media, LLC.

The first episode of Dual Survival aired in June 2010 and the show "quickly became one of the most popular and highly viewed shows on television." (Doc. 1 at 4). Based on the show's success, Discovery renewed Lundin's agreement for a second season. After the second season, Discovery again renewed Lundin's agreement but did not renew its agreement with Canterbury. Instead, Discovery hired a new co-host named Joe Teti. Lundin and Teti worked together on the third and fourth seasons of the show.

According to Lundin, Teti was very difficult to work with. During filming of the third and fourth seasons, Teti "made several unprovoked threats of violence" against individuals working on the show, including a threat to stab Lundin with a spear. (Doc. 1 at 5). Lundin complained to Discovery about Teti's threats but Discovery refused to take corrective action. During the filming of Episode 5 of Season 4, Teti threatened Lundin with an ice axe. When Lundin complained again about Teti, Discovery fired Lundin. Discovery, Original Media, and Nashel knew that firing Lundin would not be popular with the show's fans. So in an attempt to avoid fan disapproval and "manipulate public opinion," Discovery, Original Media, and Nashel decided to edit previously recorded footage such that the final episode would defame Lundin and portray him in a false light.

In March 2014, Discovery and Original Media started laying the groundwork for airing the final episode involving Lundin. Discovery and Original Media issued press releases regarding episodes they planned to air in the near future. One press release claimed an upcoming episode would require Lundin and Teti confront "some of the toughest environments in the world" and one of the men would not "finish what he started." (Doc. 1 at 7-8). Fearing Discovery and Original Media were going to use upcoming episodes to "place him in a false light and defame him," Lundin hired an attorney to send a letter to Discovery. That letter, dated April 14, 2014, stated the press release gave the appearance "that Mr. Lundin was unable to handle survival situations."

Given Lundin's occupation as a survival instructor, such statements allegedly constituted defamation per se. Apparently nothing came of the letter and, on May 21, 2014, Discovery broadcast Episode 5 of Season 4.

According to Lundin, Episode 5 contained "purposely manipulated" footage such that the episode allegedly defamed Lundin and cast him in a false light. In particular, Episode 5 depicted Lundin as mentally unstable and suffering from a mental illness. Lundin issued a public statement the same day Episode 5 aired, expressing his opinion that the episode was "false and defamatory." (Doc. 1 at 9). Discovery subsequently "re-publish[ed] Episode 5 . . . through different media—including, without limitation, through Amazon, YouTube, iTunes and many other platforms." (Doc. 1 at 17-18). Discovery also "sold Episode 5 to Hulu for repeated rebroadcasts beginning [on] January 1, 2016." (Doc. 1 at 18).

Despite sending a letter before Episode 5 aired and issuing a press release the same day it aired, Lundin did not immediately file suit. Instead, Lundin waited until May 20, 2016, to file the present suit against Discovery, Original Media, and Nashel (collectively, "Defendants"). The complaint asserts a claim for defamation, a claim for false light invasion of privacy, and a claim for declaratory relief that certain statements contained in Episode 5 were "false and defamatory." (Doc. 1 at 23). Defendants filed a motion to dismiss arguing Arizona's one-year statute of limitations bars the defamation and declaratory judgment claims. Defendants also argue Lundin's false light claim is fatally flawed because it is based on statements and depictions involving Lundin's public life.

## ANALYSIS
### I. Lundin's Defamation and Declaratory Judgment Claims are Barred by the Statute of Limitations

Defendants' first argument is that Lundin's claims for defamation and the related claim for declaratory relief are barred by the statute of limitations. The parties agree these claims are subject to a one-year statute of limitations. A.R.S. § 12-541. The parties also agree the statute of limitations began to run when the defamatory statements were

- 3 -

published. *Lim v. Superior Court*, 616 P.2d 941, 942 (Ariz. Ct. App. 1980). The issue, therefore, is whether it is "apparent on the face of the complaint" that the statements on which the claims are based were published more than one year prior to this suit being filed. *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).

As alleged in the complaint, Episode 5 was broadcast on May 21, 2014. Lundin seems to agree that claims based on the original broadcast date are time-barred. But Lundin's opposition to the motion to dismiss states Defendants are responsible for the "periodic republication of the Defamatory Episode on sites such as Amazon, YouTube and iTunes." The opposition also states Episode 5 has been "republished and rebroadcast on the Discovery Channel and in other forms and formats since its original broadcast including . . . a rebroadcast of the episode on the Discovery Channel on May 21, 2016" and a sale of Episode 5 to another service for possible broadcast after January 1, 2016. (Doc. 17 at 4). The problem for Lundin is that the complaint does not allege Discovery rebroadcast Episode 5 on May 21, 2016. In fact, the complaint was filed on May 20, 2016, meaning it would have been impossible for Lundin to have been basing his complaint on the May 20, 2016, rebroadcast. In addition, the complaint does not identify any other specific dates on which Episode 5 was "republished and rebroadcast." The only other date mentioned is January 1, 2016, which is identified as the date on which rebroadcasts might have begun.

Under some circumstances, a complaint need not need allege the specific date an alleged harm occurred. For example, if Lundin had filed suit immediately after Episode 5 originally aired, there likely would have been no need to allege the precise broadcast date because Defendants would have been well aware of the broadcast date and there would have been no issue of timeliness. Evaluation of a complaint, however, is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, the only precise broadcast date alleged in the complaint is May 21, 2014, a date well outside the statute of

- 4 -

limitations. The complaint's other allegations are that Episode 5 was published on other platforms on unidentified dates and Episode 5 might have been published on a specific platform sometime after January 1, 2016. These vague allegations are not sufficient.

Because the publication date alleged in the complaint is outside the statute of limitations, Lundin will be required to plead the publication dates at issue. Doing so will give "fair notice" to Defendants of the precise basis for Lundin's claims. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Identifying the publication dates will also enable Defendants to "defend [themselves] effectively" by making arguments tailored to particular publication dates. *Id.* Accordingly, the defamation and declaratory judgment claims will be dismissed with leave to amend.

## II. Lundin's False Light Claim is Plausible

Lundin's remaining claim is for false light. According to Defendants, Lundin's status as a public figure prevents him from asserting a false light claim based on the contents of Episode 5.[1] While false light liability is different when a public figure is involved, the complaint alleges Episode 5 involved portrayed aspects of Lundin's private life in a false light. Construed as limited to certain aspects of Episode 5 addressing Lundin's private life, the false light claim is plausible.

"Under Arizona law, the tort of false light occurs when the defendant knowingly or recklessly publishe[s] false information or innuendo about the plaintiff that a reasonable person would find highly offensive." *Ultimate Creations, Inc. v. McMahon*, 515 F. Supp. 2d 1060, 1064 (D. Ariz. 2007). Arizona law, however, places strict limitations on false light claims involving public figures. When "a plaintiff is a public figure, he may not bring a false light claim based on statements that relate to his public life or actions as a public figure." *Id.* at 1066. Instead, a public figure may only "bring a false light claim for statements that relate to his private life and present[] his private life in a false light." *Id.* Therefore, when a false light plaintiff is a public figure, a court must

---

[1] It appears the false light claim is subject to a two-year statute of limitations. A.R.S. 12-542. This suit was filed within two years of Episode 5 being aired on May 21, 2014.

- 5 -

decide whether the allegations supporting the claim are not actionable because they relate to the plaintiff's "public life" or are actionable because they relate to his "private life."

Lundin concedes he is a public figure. (Doc. 17 at 8). Lundin also concedes many of the "false statements made about his skills and competence as a survival expert" relate to his public life and cannot support his false light claim. Lundin argues, however, that Defendants manipulated Episode 5 to paint his "personal and private mental health" in a false light. Episode 5 allegedly portrayed Lundin as "suffering from a plainly serious and debilitating mental illness." (Doc. 17 at 14). In particular, the complaint alleges certain scenes in Episode 5 were manipulated to give the impression that Lundin "had an unprompted emotional outburst" and he had become "dangerously and inexplicably unhinged." (Doc. 1 at 11). Other scenes were manipulated so that Lundin appeared "absent minded and mentally unstable" or "mentally impaired." (Doc. 1 at 13, 14). Lundin claims his mental health was not part of his public life and false depictions of his mental health can support a false light claim. Defendants disagree and offer three arguments why allegedly false representations of Lundin's mental health are not, in fact, actionable.

Defendants first argue all of the statements at issue were Lundin's "own statements" and were made "in the context of [Lundin] hosting and filming" Dual Survival. (Doc. 18 at 8). That is, Defendants seem to believe they cannot be liable for merely broadcasting Lundin's own statements, especially given that those statements were directly related to Lundin "hosting and filming the show." (Doc. 18 at 8). But the facts that the statements were made by Lundin and that the depictions occurred in the context of Lundin performing his hosting duties are largely irrelevant. The complaint alleges Defendants manipulated innocuous footage, including Lundin's own statements, to portray Lundin as mentally impaired. The simple fact that Defendants used Lundin's own statements or footage taken in the context of Lundin performing his hosting duties does not preclude a false light claim because the complaint alleges the statements and footage were taken out of context.

1 Defendants' next argument is that the statements and depictions did not address Lundin's mental health. This, however, is an attempt to contradict the allegations of the complaint. The complaint identifies statements and depictions in Episode 5 that sought to portray Lundin's mental health in a false light. For present purposes, the Court must accept those allegations. The mere fact that the statements may not have *explicitly* addressed Lundin's mental health is not dispositive because "innuendo" can be sufficient to support a false light claim. *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989) ("[T]he false innuendo created by the highly offensive presentation of a true fact constitutes the injury.").

Defendants' third and final argument is that, even assuming Episode 5 addressed Lundin's mental health, that mental health related to Lundin's public life because his mental health "directly impact[ed] his qualifications to be an internationally-recognized professional survival instructor." (Doc. 18 at 8). There are no allegations in the complaint, however, that Lundin's mental health was a particular qualification for his job or that his mental health was a part of his public life. That is, there are no allegations that Lundin claimed he was uniquely qualified to be a survival expert *because of* his mental health. Instead, Lundin's mental health appears to have had no direct connection to his public life as a survival expert. The facts alleged in the complaint, viewed in the light most favorable to Lundin, establish Lundin's mental health was part of his private life and the false light claim will be allowed to proceed.

### III. Leave to Amend

Should Lundin wish to amend his defamation and declaratory relief claims to state claims not barred by the statute of limitations, he must specify the specific broadcasts and dates that are the basis for his claims. If he does not wish to amend, Lundin will be allowed to proceed solely on his false light claim.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 14) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** if Plaintiff wishes to amend his complaint, he must file an amended complaint no later than **January 30, 2017**. If an amended complaint is filed, Defendants shall respond to that complaint within the deadline established by the Federal Rules. If no amended complaint is filed by **January 30, 2017**, Defendants shall answer the complaint no later than **Feb. 3, 2017**.

Dated this 24th day of January, 2017.

Honorable Roslyn O. Silver
Senior United States District Judge